1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHERRI LYNN FRAZIER,

11              Petitioner,              No. CIV S-97-2196 LKK DAD P

12        vs.

13   TINA FARMON,

14              Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding by counsel with a petition for writ of

17   habeas corpus.  This case is one of five that have been related for administrative purposes.  On

18   September 9, 2005, the cases came before the court for hearing of respondents' motions to

19   dismiss petitioners' amended petitions as containing untimely claims that do not relate back to

20   claims that were timely filed.  Glenn R. Pruden appeared for the moving parties.  Daniel J.

21   Broderick appeared for petitioner Frazier.  The parties' arguments were heard, and the motions

22   were taken under submission.  For the reasons set forth below, the undersigned will recommend

23   that respondent's motion be granted.

24                              PROCEDURAL HISTORY

25              On October 2, 1991, Gary Summar was murdered in Trinity County.  On

26   December 16, 1991, Robert Bond, Leafe Dodds, Robert Fenenbock, Ernest Knapp, Anthony

                                       1

Lockley, and Bernard MacCarlie were arraigned in Trinity County Superior Court on charges of participating in the murder.  On October 5, 1992, Barbara Adcock, Cherri Frazier, and Sue Hamby were also arraigned in Trinity County on charges of participating in the murder.

Pretrial litigation in the Trinity County Superior Court lasted through September 1993.  During this time, motions for multiple juries, motions to determine the competence of a key government witness, motions for severance, motions for change of venue, motions to dismiss or demur, and other motions were resolved in the Trinity County Superior Court.  On August 16, 1993, the court ruled that there would be four separate trials, with two trials involving dual juries to be conducted in Solano County Superior Court and two additional trials to be conducted in either Stanislaus or San Joaquin County.  Subsequently, however, Ernest Knapp was dismissed as a defendant, and the remaining defendants were prosecuted in three rather than four trials.

The first two trials were conducted in Solano County, while the third was conducted in Contra Costa County.  All three trials were prosecuted by Robert Maloney, a special prosecutor appointed to the case.  Defendants Hamby, Fenenbock, and Frazier were tried in the first trial, which began on November 15, 1993, and concluded on February 4, 1994; judgment was entered on March 16, 1994.  Defendants Bond, MacCarlie, and Dodds were tried in the second trial, which commenced in September 1994; judgment was entered on January 20, 1995. The trial of defendants Adcock and Lockley was conducted in 1995.

I. Petitioners Hamby, Fenenbock, and Frazier

In the first trial, defendant Fenenbock was convicted of first degree murder, with enhancements for use of a weapon and infliction of great bodily injury, but was acquitted of conspiracy to commit murder.  Defendants Hamby and Frazier were convicted of conspiracy to commit murder but were acquitted of murder.

On appeal, defendant Fenenbock raised seven claims, alleging there was insufficient evidence to support his conviction, two jury instructions were erroneous, several errors stemming from the testimony of child witness Randy Hogrefe, and the trial court

erroneously allowed rebuttal witnesses.  Defendant Hamby joined in the claims raised by defendants Fenenbock and Frazier and raised additional claims concerning jury instructions and trial court error with regard to rebuttal evidence.  Defendant Frazier joined in the claims raised by defendants Hamby and Fenenbock and raised additional claims concerning jury instructions and her sentence.  Defendant Frazier also filed a state habeas petition claiming ineffective assistance of trial counsel.

In a partially published opinion filed on July 1, 1996, People v. Fenenbock, et al., 46 Cal. App. 4th 1688 (1996), the California Court of Appeal for the First Appellate District affirmed the judgments of conviction entered against defendants Hamby, Fenenbock, and Frazier and denied defendant Frazier's habeas petition.  On October 2, 1996, the California Supreme Court denied review.  The defendants did not file petitions for certiorari in the United States Supreme Court.

On January 31, 1997, Sue Hamby filed a pro se federal habeas petition raising two claims.  The respondent filed an answer to her petition on April 11, 1997, and a pro se traverse was filed on May 14, 1997.  On September 12, 1997, Robert Fenenbock filed a pro se federal habeas petition raising seven claims, and on November 20, 1997, Cherri Frazier filed a pro se federal habeas petition raising two claims.  On December 4, 1997, the Federal Defender was appointed to represent petitioner Fenenbock.  The Hamby, Fenenbock, and Frazier cases were related for administrative purposes on December 24, 1997, and the Federal Defender was appointed to represent petitioners Hamby and Frazier.  Jolie Lipsig subsequently substituted in as counsel for petitioner Fenenbock, and Janice Lagerlof substituted in as counsel for petitioner Hamby.  At the initial status conference held on February 26, 1998, the undersigned granted the first of many continuances requested by petitioners for the purpose of obtaining and reviewing the voluminous records of their trial and of the two subsequent trials.  On March 16, 1999, the California Court of Appeal filed its decision in the consolidated appeals of co-defendants Bond, MacCarlie, Adcock, and Lockley.  Petitioners Hamby, Fenenbock, and Frazier were eventually

3

ordered by the undersigned to file amended petitions and any accompanying motions by May 1, 2000. However, on April 5, 2000, petitioners moved for leave to conduct discovery regarding claims not yet presented to any court. The motion was denied, and further continuances were granted.

On September 24, 2001, petitioners moved to hold their federal proceedings in abeyance. Petitioners indicated their intention to file state exhaustion petitions by November 16, 2001. In opposition, respondents argued that the statute of limitations had expired and any new claims would be untimely. In findings and recommendations filed November 1, 2001, the undersigned recommended that petitioners' joint motion be granted and that all petitioners be required to file a motion for leave to amend or an amended federal habeas petition within thirty days after disposition of their state habeas petitions. The findings and recommendations were adopted on December 4, 2001, and the Hamby, Fenenbock, and Frazier cases were stayed.

II.  Petitioners Bond and MacCarlie

In the second trial in the Solano County Superior Court, defendant Dodds was acquitted of all charges. Defendant MacCarlie was convicted of conspiracy to commit murder, two counts of kidnaping, mayhem, and assault with a deadly weapon, plus enhancements for use of a weapon and infliction of great bodily injury, but the jury was unable to reach a verdict on the charge of murder. The trial court declared a mistrial on the murder charge against defendant MacCarlie. Defendant Bond's separate jury was also unable to reach a verdict on the charge of murder, and a mistrial was declared to that count. Defendant Bond was convicted of conspiracy to commit murder and acquitted of the remaining charges.

On appeal, defendant Bond claimed that there was insufficient evidence of conspiracy to commit murder, the trial court erroneously instructed the jury on the requisite intent for conspiracy, and the trial court failed to require the jury to determine whether petitioner conspired to commit first or second degree murder. Defendant Bond joined in all applicable arguments raised by defendant MacCarlie. Defendant MacCarlie argued on appeal that (1) the

trial court erroneously instructed the jury on the requisite intent for conspiracy, lesser included offenses to conspiracy to commit murder, and heat of passion; (2) trial counsel was ineffective because he failed to request instructions on lesser included offenses to conspiracy to commit murder; (3) the trial court erred by taking partial verdicts before replacing a juror who had become ill; and (4) the trial court erroneously calculated presentence credits.

In an unpublished opinion filed March 16, 1999, the California Court of Appeal for the First Appellate District affirmed the convictions of defendants Bond and MacCarlie but remanded for modification of defendant MacCarlie's presentence credits.  On June 30, 1999, the California Supreme Court denied review.  Neither defendant Bond nor defendant MacCarlie filed a petition for certiorari in the United States Supreme Court.

On October 29, 1999, Robert Bond filed a pro se federal habeas petition alleging that there was insufficient evidence of conspiracy to commit murder and that the jury instructions on conspiracy to commit murder violated due process.  The Federal Defender was appointed to represent petitioner Bond, and the case was set for a status conference.  Lindsay Anne Weston substituted in as counsel for petitioner Bond.  The court declined to relate the Bond case to the Hamby, Fenenbock, and Frazier cases.  Several continuances were thereafter granted in the Bond case.

On August 23, 2000, Bernard MacCarlie filed a pro se federal habeas petition alleging that the jury instructions on conspiracy to commit murder violated due process, the failure to give instructions on conspiracy to commit second degree murder violated due process and ex post facto laws, trial counsel was ineffective for failing to request an instruction on conspiracy to commit second degree murder, the trial court's failure to instruct on heat of passion violated due process and ex post facto laws, and the verdict was coerced as a result of the court's taking partial verdicts before a juror was excused for illness.  Petitioner MacCarlie's application to consolidate his case with petitioner Bond's was denied.  The court appointed the Federal Defender to represent petitioner MacCarlie and set the case for a status conference.  Margaret

1  Littlefield substituted in as counsel for petitioner MacCarlie.  Thereafter, several continuances

2  were granted at the request of counsel for the various petitioners.

3          A status conference was held in the Bond and MacCarlie cases on October 26,

4  2001, and a scheduling conference was set for January 18, 2002.  The Bond and MacCarlie cases

5  were related to the Hamby, Fenenbock, and Frazier cases for administrative purposes on

6  December 12, 2001.  On January 18, 2002, a deadline was set for the filing of abeyance motions

7  by petitioners Bond and MacCarlie.  The motions were filed, and respondents opposed them on

8  the ground that the statute of limitations had expired and any new claims would be untimely.  In

9  findings and recommendations filed April 23, 2002, the undersigned recommended that

10  petitioners' motions be granted and that each petitioner be required to file an amended federal

11  habeas petition within thirty days after disposition of their state habeas petitions.  The findings

12  and recommendations were adopted on May 20, 2002, and the Bond and MacCarlie cases were

13  stayed.

14  III. Further State Court Proceedings

15          On November 26, 2001, petitioner Hamby filed a habeas petition in the California

16  Supreme Court raising nine claims, and petitioner Frazier filed a petition raising fifteen claims.

17  On December 10, 2001, petitioner Fenenbock filed a petition raising nine claims.  On July 19,

18  2002, petitioner MacCarlie filed a petition raising ten claims.  On August 20, 2002, petitioner

19  Bond also filed a petition raising ten claims.  In a single order filed June 25, 2003, the California

20  Supreme Court denied the exhaustion petitions filed by all five petitioners.

21  IV.  Further Federal Court Proceedings

22          On various dates after August 4, 2003, four of the five petitioners filed amended

23  habeas petitions as a matter of right.  Petitioner Fenenbock's amended petition alleges ten claims,

24  including the seven raised in his original petition.  Petitioner Frazier's amended petition alleges

25  sixteen claims, including the two raised in her original petition.  Petitioner Bond's amended

26  petition alleges twelve claims, including the two raised in his original petition.  Petitioner

MacCarlie's amended petition alleges fourteen claims, including the five raised in his original petition. Because the respondent previously filed an answer to petitioner Hamby's original petition, petitioner Hamby filed a motion for leave to amend. Respondent stipulated to the filing of petitioner Hamby's amended petition while reserving the right to raise a statute of limitations defense to any untimely claims. Petitioner Hamby's amended petition alleges eleven claims, including the two raised in her original petition.

On December 5, 2003, respondents filed their first motions to dismiss petitioners' newly added claims as barred by the statute of limitations. The Ninth Circuit subsequently ruled that the transaction or occurrence at issue in a federal habeas petition for purposes of Rule 15(c) is the petitioner's state trial and conviction and that all new claims alleged in an amended petition relate back to the date of filing the original petition and thereby avoid the one-year statute of limitations. <u>Felix v. Mayle</u>, 379 F.3d 612 (9th Cir. 2004). The undersigned recommended that respondents' motions to dismiss be denied, and the findings and recommendations were adopted on October 1, 2004.

On January 4, 2005, respondents moved to stay these proceedings pending Supreme Court action in <u>Felix v. Mayle</u>. Respondents' motions were heard and denied on February 4, 2005, but respondents were granted six months to respond to the amended petitions. On June 23, 2005, the Supreme Court held that new claims alleged in an amended habeas petition do not relate back to the date of the original petition if the new claims are supported by facts that differ in time and type from those set forth in the original petition. <u>Mayle v. Felix</u>, 545 U.S. 644, 125 S. Ct. 2562 (2005). Respondents' renewed their motions to dismiss in light of the Supreme Court's decision with those motion being filed on August 4, 2005.

THE PARTIES' ARGUMENTS

I. <u>Respondent's Motion to Dismiss</u>

Respondent moves to dismiss petitioner Frazier's amended petition on the ground that it contains claims that are untimely under the AEDPA statute of limitations and do not relate

back to claims that were timely filed. Respondent asserts that petitioner was aware at all times of respondent's intention to oppose petitioner's newly exhausted claims as untimely, yet petitioner did not include in her amended petition any reasons why the new claims should not be dismissed as time barred. Respondent acknowledges that petitioner offered such reasons in opposition to respondent's first motion to dismiss, but respondent declines to assume petitioner will rely on the same reasons in opposing the renewed motion to dismiss.

Respondent contends that the new claims alleged in petitioner Frazier's amended petition are untimely. Respondent identifies the newly added claims as Claims 1-8 and 11-16. Respondent sets forth a history of petitioner's proceedings in state and federal court that includes the following key dates:

| | |
|---|---|
| October 2, 1996 | California Supreme Court denied review on direct appeal |
| December 31, 1996 | State court judgment became final upon expiration of the time to file a petition for certiorari in the United States Supreme Court |
| November 20, 1997 | Federal habeas petition was filed, alleging two claims |
| December 31, 1997 | One-year period of limitation expired |
| November 26, 2001 | State exhaustion petition was filed in California Supreme Court, alleging fifteen claims |
| June 25, 2003 | California Supreme Court summarily denied the habeas petition |
| August 4, 2003 | Petitioner filed an amended federal habeas petition alleging sixteen claims, including the two original claims (now designated claims 9 and 10) |

Respondent points to the date on which petitioner's judgment became final, the date on which the statute of limitations expired, and the date, almost six years after the statute of limitations expired, on which petitioner filed her amended federal habeas petition raising new claims. Respondent concludes that she has met her burden to plead and prove that petitioner's new claims are untimely and must be dismissed unless petitioner can meet her burden of establishing a factual basis for tolling the statute in some way that will circumvent the limitations period for her. Respondent compares each of petitioner's new claims with those alleged in

1  petitioner's initial federal habeas petition and contends that not one new claim relates back to any

2  claim alleged in the original, timely pleading.

3  II.  Petitioner's Opposition

4          Petitioner Frazier asserts that each of respondent's contentions is incorrect.

5  Petitioner presents several arguments concerning the timeliness of her new claims and contends

6  that she is also entitled to join in all arguments presented by the petitioners in the four related

7  cases.  Petitioner contends that the limitations period for her amended petition and the claims

8  alleged therein did not begin to run from the date on which her state judgment became final but

9  instead began to run on November 26, 2001, the date on which habeas counsel completed his

10  preparation of a state exhaustion petition and filed it in the California Supreme Court.  Petitioner

11  also argues that a state-created impediment to a timely filing caused by prison officials'

12  destruction of her records was not removed until November 26, 2001, when habeas counsel's

13  research and investigation was complete on all new claims.

14      A.  Relation Back to Timely Claims

15          Petitioner argues that Claims 9 and 10 in her amended petition were raised in her

16  initial federal habeas petition[1] and even the restrictive reading of Fed. R. Civ. P. 15(c) adopted by

17  the Supreme Court permits the relation back of some of petitioner's new claims because they

18  share a common core of operative facts with Claim 9 or Claim 10.

19          Petitioner asserts that the operative facts for Claim 9 include at a minimum the

20  following facts discussed by the California Court of Appeal in its opinion on direct appeal:  (1)

21  the discussion of jury instructions by the prosecutor and the judge, (2) the actual jury instructions

22  given, (3) the evidence relating to petitioner's actions after the murder, and (4) the theory of the

23  defense.  Petitioner asserts that the operative facts with respect to Claim 10 include:  (1) the jury

24  instructions given, (2) defense counsel's failure to request jury instructions on lesser included

25

26          [1]  Respondent concedes the timeliness of these two claims.

offenses, (3) the charging allegations of the accusatory pleading describing the offense, including the allegations of overt acts committed in furtherance of the alleged conspiracy by any alleged co-conspirators, (4) the agreement described in the accusatory pleading, and (5) the failure of defense counsel to argue multiple conspiracies.  Petitioner contends that her new Claims 1, 7, and 11, as well as a portion of her new Claim 5, concern the same operative facts as Claim 10. Petitioner reasons that Claim 1 and the first paragraph of Claim 5 concern the overt acts alleged in the charged conspiracy agreement, Claim 7 concerns the conspiracy as charged in the accusatory pleading; and Claim 11 concerns the evidence introduced in relation to the charged conspiracy as well as the overt act committed in furtherance of the charged conspiracy. Petitioner contends that the sixth, seventh, and twentieth paragraphs of Claim 5, concerning counsel's failure to request jury instructions, and the eighth paragraph of Claim 5, concerning counsel's failure to argue multiple conspiracies, also concern the same operative facts as Claims 9 and 10.  Petitioner contends that her new Claim 16, alleging cumulative error, relates back to Claims 9 and 10 to the extent that Claim 16 is based on Claims 1, 7, and 11 and the specified paragraphs of Claim 5.

Petitioner argues next that her new Claims 2, 3, 4, 13, and 14, as well as the parts of Claim 16 (cumulative error) based on those five claims, relate back to timely claims raised by co-defendant Fenenbock.  Citing the advisory committee notes to the 1966 amendments to Rule 15, petitioner argues that Rule 15(c) permits the amended claims of one petitioner to relate back to the claims of a related petitioner.  Petitioner also cites the court's December 24, 1997 order relating the cases of petitioners Fenenbock, Hamby, and Frazier in support of her relation back argument.

B.  Application of 28 U.S.C. § 2244(d)(1)(D)

Petitioner offers a copy of a declaration that was filed in her state exhaustion proceedings for the purpose of explaining petitioner's delay in presenting her habeas claims to the California Supreme Court.  In that declaration, petitioner's federal habeas counsel identifies

1    the month and year, or at least the year, in which investigation, research, and evidence-gathering

2    was completed for each claim.  Petitioner argues that these dates, to the extent that they are the

3    dates on which the factual predicates for the claims could have been discovered through the

4    exercise of due diligence, are the dates on which the AEDPA statute of limitations began to run

5    with respect to her new claims.

6            Petitioner Frazier makes the following assertions regarding the discovery of her

7    new claims:  she herself lacked the legal training to recognize the legal issue alleged in Claim 1,

8    and habeas counsel, who had access to the relevant document in 1998, delayed his legal research

9    into the issue until November 2001 because he was investigating other issues; petitioner herself

10   was aware of the factual predicate for Claim 2 because she was present during trial; petitioner's

11   habeas counsel was aware in 1998 of the issue presented in Claim 3, but development of the

12   supporting facts required investigation that continued into November 2001; although petitioner

13   herself was aware of some of the facts underlying the issue in Claim 4, and that issue was raised

14   on direct appeal, her habeas counsel did not have a full understanding of the facts until

15   investigation was completed by other habeas counsel and he reviewed the evidence and

16   researched the issue in late summer and fall 2001; petitioner herself lacked the legal training to

17   identify the errors of trial counsel alleged in Claim 5, although some of the errors were apparent

18   on the record, and habeas counsel discovered some of the errors in 1998 but did not discover

19   other errors until his investigation and research were completed in fall 2001; the errors of

20   appellate counsel alleged in Claim 6 were apparent on the record, but habeas counsel could not

21   determine the full extent of counsel's ineffectiveness until the records for all three trials were

22   obtained and reviewed, habeas investigation was completed, and all viable claims had been

23   investigated and developed; habeas counsel was aware in 1998 and 1999 of the basis for Claim 7,

24   which had been identified prior to petitioner's trial and was raised at trial, but delayed

25   presentation of the claim in order to join it with all other viable claims; the factual basis for

26   Claim 8, which concerns the sequencing of trials, was known to petitioner prior to trial because

she was present when the trials were scheduled, but her federal habeas counsel, who recognized the issue in 1999, did not obtain complete factual support for the claim until investigation and research were completed in fall 2001; the factual basis for Claim 11 was known to petitioner during trial because she was present, but habeas counsel was not aware of the issue until 1999 and he delayed presentation of the claim in order to join it with all other viable claims; the factual basis for Claim 12 was known to petitioner because the conduct of the prosecution and of law enforcement was discussed extensively both pretrial and at trial, but all of the facts supporting the claim were not evident to habeas counsel until investigation was completed and evidence was obtained in 2000 and 2001, with additional evidence obtained as late as 2003; the factual predicate for Claim 13 was apparent to habeas counsel in 1998, but investigation was necessary and presentation of the claim was delayed in order to join it with all other viable claims; the factual predicates for some of the prosecutorial misconduct alleged in Claim 14 were apparent during trial, but habeas counsel did not determine the full extent of the misconduct until he received and reviewed the transcripts for all three trials and completed additional investigation, after which presentation of the claim was delayed in order to join it with all other viable claims; the factual predicate for Claim 15 was not known to petitioner Frazier herself until she was informed of the contents of the voir dire videotape in 2001 by federal habeas counsel, who had received the videotape in June 1999 but delayed presentation of the claim in order to join it with all other viable claims; habeas counsel was aware of Claim 16, alleging cumulative error, in 1998, but he could not present the claim until all viable errors were identified, researched, and presented.

Computing the one-year statute of limitations in reverse from the filing of her amended federal habeas petition, petitioner reasons that (1) she filed her amended petition on August 4, 2003, only nine days after the order denying her state exhaustion petition became final, leaving 356 days of the one-year period of limitations; (2) pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations was tolled from November 26, 2001, when she filed her exhaustion

1    petition, to July 25, 2003, when the California Supreme Court's order denying the petition

2    became final; and (3) therefore all claims discovered after December 6, 2000, i.e., 356 days prior

3    to November 26, 2001, are timely.  Petitioner contends that some of her new claims were not

4    discovered until after December 6, 2000.

5        C.  Application of 28 U.S.C. § 2244(d)(1)(B)

6            Petitioner Frazier also claims that the state destroyed her legal records, thereby

7    creating an impediment to her ability to file a "full" federal habeas petition when she drafted her

8    initial pro se petition.  In this regard, petitioner states that her legal materials were destroyed by

9    prison officials despite their awareness of the one-year federal statute of limitations and despite

10   state law providing that inmate access to the courts shall not be obstructed.  Petitioner Frazier

11   states that she copied petitioner Hamby's federal habeas petition but was unable to make any

12   changes or additions to the pleading because her records had been destroyed.  Petitioner contends

13   that this impediment was never removed by the state and was only effectively removed when her

14   habeas counsel acquired and reviewed substitute records and filed a state habeas petition on

15   November 26, 2001.  Citing no authority other that § 2244(d)(1)(B), petitioner contends that the

16   statute of limitations for the entire amended petition commenced on November 26, 2001, but was

17   tolled from that date to July 25, 2003, and ran only from July 26, 2003, to August 4, 2003, when

18   she filed her amended federal habeas petition.

19       D.  Equitable Tolling

20           Petitioner Frazier argues further that the statute of limitations for her new claims

21   should be equitably tolled from November 20, 1997, when she filed her pro se federal habeas

22   petition alleging two claims, to November 26, 2001, when she filed her state habeas petition,

23   because she was attempting to litigate her claims in federal court during that time.  Petitioner

24   cites Burnett v. NY Central Railroad, 380 U.S. 424, 428 (1965), in which the Supreme Court

25   recognized that a statute of limitations can be equitably tolled while a litigant is attempting to

26   litigate the same case in another court, and Duncan v. Walker, 533 U.S. 167, 183 (2001), in

1  which Justice Stevens suggested in his concurrence that the habeas statute of limitations could be

2  equitably tolled while a petitioner attempts to litigate her case in federal court.

3          Petitioner argues that equitable tolling is justified in this case for the entire time

4  during which she was attempting to litigate her case in federal court because: (1) the respondents

5  were put on notice within the statute of limitations, by the filing of petitioners' timely federal

6  habeas petitions and by the district court's notice to respondents that the three cases are related

7  and arise from the same transaction, that petitioners Frazier, Hamby, and Fenenbock were

8  challenging their convictions; (2) the respondent has previously responded on the merits to the

9  vast majority of petitioner Frazier's claims, either on direct appeal or in response to the

10  petitioners' state exhaustion petitions, and therefore has no equitable basis for precluding a

11  response on the merits to petitioner Frazier's Claims 1-4, 6-7, 9-14, and 16 in federal court; and

12  (3) due to extraordinary circumstances beyond petitioner Frazier's control, arising from prison

13  officials' destruction of her legal materials, the extraordinary complexity of the underlying state

14  proceedings and petitioner's federal habeas case, the respondent's repeated stipulation to

15  continuances and extensions of time and respondents' general awareness of and agreement with

16  the time frames of the federal proceedings, and the need to present adequate legal and factual

17  arguments in the state exhaustion petition, it was impossible for petitioner to file a federal habeas

18  petition raising all of her claims prior to November 26, 2001.  Petitioner grounds her assertion of

19  extraordinary complexity on the number of co-defendants, the three separate trials in state court

20  and the time elapsed between them, the nature of the crimes charged, and the fact that the

21  prosecution theory of the case as to all defendants was based, in petitioner's opinion, on a false

22  factual premise.

23  III.  Respondent's Reply

24          A.  Relation Back

25          Respondent asserts that petitioner's analysis of relation back is a thinly veiled

26  repackaging of the approach that was advanced by the Seventh and Ninth Circuits and rejected by

1  the Supreme Court in <u>Mayle v. Felix</u>.  Respondent again sets out petitioner Frazier's original

2  claims, in which she attacked the trial court's failure to give an accessory-after-the-fact

3  instruction and the trial court's failure to instruct the jury on lesser included offenses that the

4  evidence showed could have been the object of the conspiracy, and discusses the four specific

5  claims for which petitioner claims relation back, in whole or in part, to the original petition.

6         With regard to new Claim 1, alleging that petitioner's conspiracy conviction was

7  based on overt acts that were not separate from the charged conspiracy agreement, respondent

8  concedes that some of the operative facts necessary to adjudicate Claim 10 (the original Claim 2),

9  such as petitioner's actions during her criminal activity, are related to Claim 1, but respondent

10  argues that such facts are only a subset of the larger core of operative facts.  Respondent asserts

11  that the core of operative facts for new Claim 1 includes other facts, such as those involving

12  California law regarding overt acts, which are not shared in common with Claim 10.  Respondent

13  contends that petitioner's argument, taken to its logical conclusion, would mean that any

14  sufficiency of the evidence claim would provide a basis for relation back of any jury instruction

15  claim.

16         With regard to new Claim 5(a), referred to by petitioner as the first paragraph of

17  Claim 5, alleging that her trial counsel failed to challenge overt acts charged as part of the

18  conspiracy count that were not separate from the charged conspiracy agreement, respondent

19  argues that the ineffective assistance of counsel claim does not relate back to Claim 10 because

20  the substantive predicate for Claim 5(a) fails to relate back for the same reasons Claim 1 does not

21  relate back and because an ineffective assistance of counsel claim differs significantly from a

22  Fourteenth Amendment due process claim based on a trial court's jury instruction error.

23         With regard to new Claim 7, alleging that petitioner's rights to fair notice of the

24  charges against her were violated by the charge of conspiracy to commit murder brought against

25  her, respondent argues that the operative facts involve not only the nature of the overt acts

26  charged but also whether those overt acts could serve as the basis for the jury's finding on the

conspiracy charge.  Respondent contends that the operative facts for Claim 7 go to the legal issue of what constitutes a proper conspiracy charge under California law, which are facts have nothing to do with whether California law permitted instruction on lesser included offenses that could have been the object of the conspiracy.

With regard to new Claim 11, alleging that petitioner's rights to due process and a jury trial were violated because there was insufficient evidence for the jury to find petitioner guilty of conspiracy to commit murder, respondent argues that the claim does not share operative facts in common with a claim that the trial court failed to instruct the jury on lesser included offenses that could have been the object of the conspiracy.   Respondent contends that the operative facts for a failure to instruct claim concern whether the trial court correctly applied California law on conspiracy to commit murder when it instructed the jury, while the operative facts for a sufficiency of the evidence claim concern the evidence presented at trial and whether, after reviewing that evidence in the light most favorable to the prosecution, no rational trier of fact could have found sufficient evidence to convict the petitioner, beyond a reasonable doubt, of the crime of which she was convicted.

With regard to new Claim 16, alleging cumulative error, respondent cites the arguments stated in respondent's motion to dismiss.

In response to petitioner Frazier's assertion that many of her new claims relate back to other petitioners' timely claims, respondent argues that petitioner Frazier cites no authority, other than a single Federal Tort Claims Act case that is readily distinguished, for the sweeping proposition that respondent had notice of this petitioner's new claims because similar claims were raised by separately tried co-defendants in their own state appeals and federal habeas petitions.  Respondent asserts that the plain language of Rule 15(c) contemplates relation back to the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," not to a different pleading filed by a co-defendant.  Respondent argues that

/////

1   petitioner's reading of the rule would not ensure effective notice to the state and would thwart the

2   policy behind the AEDPA statute of limitations.

3            Respondent contends that petitioner's reliance on this court's related case orders

4   is also misplaced because the findings in those orders were made pursuant to Local Rule 83-

5   123(a), which states that, for purposes of judicial economy, an action is "related" to another

6   action and both will be assigned to the same judge if "(1) both actions involve the same parties

7   and are based on the same or a similar claim; [and] (2) both actions involve the same property,

8   transaction, or event."  Respondent argues that nothing in that Local Rule suggests that the

9   determination of whether cases should be assigned to the same judge is based on the same

10  considerations that underlie Rule 15(c) and further that logic does not compel such a conclusion

11  from two rules with such disparate concerns.

12            B.  No Impediment Under 28 U.S.C. § 2244(d)(1)(B)

13            Respondent also rejects petitioner Frazier's contention that the state prevented her

14  from filing a timely federal habeas petition by destroying her legal materials.  Respondent

15  contends that § 2244(d)(1)(B) requires a causal relationship between the unconstitutional state

16  action and the alleged prevention from filing the petition and that a petitioner may not prevail

17  under this provision absent facts establishing that she was so inhibited by the state's action that

18  she was unable to file and state a cause of action before the limitation period expired.

19            Respondent argues that petitioner Frazier has not demonstrated a constitutional

20  violation because, even if her factual allegations are true, she has shown only that prison officials

21  enforced a reasonable limitation on the amount of materials that can be retained in a cell, after

22  attempting to accommodate her by asking if they could send her records to a friend or relative.

23  Respondent contends that petitioner did not suffer an actual injury and was not denied

24  meaningful access to the court because all of her claims concern acts or omissions that took place

25  at her trial, those claims were known to petitioner because she was present at trial, and the facts

26  supporting the claims could have been alleged without citations to the record.

1    Respondent argues that, if a state impediment existed, that impediment was

2    removed, at the latest, by March 16, 1999, when habeas counsel received the last of the state

3    court records in the related trials.  Respondent asserts that the statute of limitations would have

4    begun to run for purposes of § 2244(d)(1)(B) on March 17, 1999, and would have expired on

5    March 16, 2000, rendering petitioner's amended petition untimely even if § 2244(d)(1)(B) were

6    applicable under the circumstances presented by petitioner Frazier.

7         C.  No Delayed Discovery Under 28 U.S.C. § 2244(d)(1)(D)

8    In response to petitioner Frazier's argument that she could not have discovered the

9    factual predicates of some of her claims through the exercise of due diligence until after the

10   direct review period expired, thereby triggering a later start date for the limitations period,

11   respondent notes that petitioner Frazier concedes that she was aware of the facts underlying

12   Claims 2, 3, 4, 7, 8, 11, 12, 13, and 14 at the time of trial and that the factual predicates for

13   Claims 7, 9, 10, and 11 were addressed by the California Court of Appeal in its 1996 opinion.

14   Respondent contends that petitioner Frazier has invoked § 2244(d)(1)(D) on the grounds that she

15   was unable to locate and interview witnesses with relevant information until 2000, 2001, or

16   2003, that she did not have a "full understanding of the facts" until additional investigation was

17   completed in the fall of 2001, and that the "full extent" of the claims emerged only upon review

18   of other trial transcripts that were received in August 1998.

19   Respondent argues that the factual predicate of each claim is discovered for

20   purposes of § 2244(d)(1)(D) when the petitioner knew or should have known the relevant facts

21   supporting that claim, not when the petitioner obtains evidentiary support for it, realizes the legal

22   significance of the facts, finishes investigating and researching the claim, or finishes

23   investigating and researching all viable claims and then drafts a pleading containing all such

24   claims.  Respondent contends that the statute of limitations commenced for all of petitioner

25   Frazier's claims on dates prior to November 2000 and expired prior to the filing of her state

26   exhaustion petition in November 2001.

1    D.  No Statutory Tolling Under 28 U.S.C. § 2244(d)(2)

2        Respondent next disputes petitioner's backward-looking method of calculating the

3    statute of limitations as incorrect because the statute sets forth the means of determining the date

4    on which the limitations period commences.  Respondent contends that the statute of limitations

5    expired on December 31, 1997, and that petitioner's state exhaustion petition was filed too late to

6    toll the statute under § 2244(d)(2).  Respondent cites Ninth Circuit cases holding that § 2244(d)

7    does not permit the reinitiation of a limitations period that expired before a state habeas petition

8    was filed.  In addition, respondent notes that, even if statutory tolling were available, petitioner

9    has incorrectly asserted that the California Supreme Court's order denying the exhaustion

10   petition was final thirty days after it was filed on June 25, 2003.  Respondent points to the

11   revised California Rule of Court effective January 1, 2003, providing that summary denials of

12   habeas petitions by the California Supreme Court are final upon filing.

13   E.  Equitable Tolling

14       In response to petitioner's contention that the statute of limitations should be

15   equitably tolled for more than five years, respondent asserts that the authorities cited by petitioner

16   do not justify equitable tolling in this case.

17       Respondent argues that the Supreme Court allowed tolling in Burnett, the non-

18   AEDPA case cited by petitioner, on the basis of considerations related to venue, misfiled

19   pleadings, and national uniformity, considerations not applicable here.  Respondent argues next

20   that Justice Stevens' concurrence in Duncan, joined in by only one other justice, addressed an

21   entirely different concern, i.e., "the class of petitioners whose timely filed habeas petitions

22   remain pending in district court past the limitations period, only to be dismissed after the court

23   belatedly realizes that one or more claims have not been exhausted."  533 U.S. at 184 (Stevens,

24   J., concurring).  Respondent distinguishes petitioner Frazier's case from the Duncan case by

25   noting these facts:  petitioner Frazier filed a timely, fully exhausted petition; counsel was

26   appointed for petitioner after the statute of limitations had expired on December 31, 1997;

19

petitioner's counsel first stated that he intended to file an amended petition in his October 22, 1999 status report, after having previously indicated only that he was investigating whether additional claims existed; petitioner's state habeas petition presenting her unexhausted claims was not filed until November 26, 2001; petitioner's amended federal petition was filed on August 4, 2003.  This situation, respondent asserts, is a far cry from the situation of a petitioner like Duncan, who had raised his unexhausted claims in a timely manner.

Respondent contends that it is well established in the Ninth Circuit that the test for equitable tolling under AEDPA is whether extraordinary circumstances beyond the petitioner's control made it impossible to timely file a petition.  With regard to petitioner's argument that the equities are on her side because the state has responded on the merits to the majority of her new claims, respondent states that an informal response was filed in July 2002 addressing four specific questions raised by the California Supreme Court in the habeas proceedings and that the response relied primarily on California law.  Respondent observes that petitioner's suggested balancing of the equities ignores the fact that she did not reveal her additional unexhausted claims until she filed her state habeas petition in November 2001, four years after the limitations period had expired–an excessive delay that defeats her claim of entitlement to an equitable remedy.

Respondent disputes petitioner's argument that the destruction of her state court records should constitute grounds for equitable tolling even if it did not create an unconstitutional impediment pursuant to § 2244(d)(1)(B) because the destruction of her records precluded her from adding claims to the two she copied from petitioner Hamby's federal habeas petition.  Respondent points to petitioner Frazier's admission that she was aware of the factual predicates of numerous claims and the fact that the requirements for pleading those claims are minimal, i.e., only a brief summary of factual allegations, without citations to the record, is required.  Respondent asserts that the destruction of petitioner's records was not extraordinary and did not make it impossible for her to timely file additional claims.

1    Respondent agrees that the case is complex but is unaware of any authority for the

2    proposition that the statute of limitations for filing a federal habeas petition may be tolled

3    because the issues to be presented are difficult.  Respondent observes that Congress was aware

4    when it enacted the one-year statute of limitations that some petitions would involve complex

5    claims and indeed provided only a six-month limitation period in capital cases.

6    Present counsel for respondent asserts that previous counsel for respondents in the

7    five related cases stipulated to continuances of status conferences but did not agree at any time to

8    waive the statute of limitations.  Respondent notes that none of the stipulations mentioned the

9    limitations period, and mere acquiescence in requests for continuances cannot constitute an

10   express waiver.  Respondent argues that there are no other factors in this case that could

11   reasonably have been relied upon by petitioners or their counsel as a basis for assuming that

12   respondents were agreeing to waive the limitations period.  Respondent adds that the respondents

13   in these related cases had no duty to research petitioners' cases and advise petitioners' attorneys

14   of their deadlines.  Besides, respondent contends, the statute of limitations had already expired

15   prior to any of the stipulations and the parties' stipulations could not revive and extend the

16   limitations period.  Respondent argues that petitioner's counsel could and should have developed

17   and presented petitioner's new claims earlier.

18   In response to petitioner Frazier's argument that this court previously found that

19   petitioners' counsel acted diligently in pursuing new claims, respondent observes that the court's

20   determination was made in the context of granting a discretionary motion for abeyance and did

21   not resolve the separate issue of whether petitioner is entitled to equitable tolling under the

22   applicable legal standards.

23   Respondent concludes that petitioner's arguments fail to meet the very high

24   threshold necessary to trigger equitable tolling and that petitioner has not met her burden of

25   showing that equitable tolling is warranted in this case.

26   /////

ANALYSIS

In findings and recommendations filed in the five related cases on August 11, 2004, the undersigned recommended that respondents' first motions to dismiss be denied pursuant to Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  Because the Felix decision was issued on August 9, 2004, the undersigned recognized that renewed motions to dismiss might be appropriate at a later time and therefore recommended that the motions to dismiss be denied without prejudice.  (See Findings and Recommendations filed Aug. 11, 2004, at 16.)  The findings and recommendations were adopted in full, and respondents' motions were denied without prejudice on September 30, 2004.

By order filed February 8, 2005, the undersigned directed the respondents to respond to the amended petitions by answer or motion to dismiss.  (See Order filed Feb. 8, 2005, at 3.)  Taking into consideration the fact that the Supreme Court had granted certiorari in Mayle v. Felix, the undersigned granted respondents six months to file and serve their responses.  On June 23, 2005, the Supreme Court reversed the Ninth Circuit's decision in Felix.  Mayle v. Felix, 545 U.S. 644, 125 S. Ct. 2562 (2005).  Respondents have properly renewed their motions to dismiss the amended petitions as containing claims that are untimely.  Arguments unrelated to the timeliness of petitioners' claims will not be considered by the court at this time and should be raised in answers responsive to the claims that are found to be timely presented.

I.  The AEDPA Statute of Limitations

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted.  The AEDPA amended 28 U.S.C. § 2244 by adding the following provision:

   (d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

      (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

/////

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  The one-year AEDPA statute of limitations applies to all federal habeas corpus petitions filed after the statute was enacted and therefore applies to the present case, which was filed after April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

A.  Application of § 2244(d)(1)(A)

For purposes of 28 U.S.C. § 2244(d)(1)(A), petitioner Frazier's judgment became final on December 31, 1996, ninety days after the California Supreme Court denied review on appeal.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  The one-year period of limitation began to run on January 1, 1997.  A state habeas petition filed in the California Court of Appeal by petitioner's appellate counsel was denied by that court in its order affirming the judgments of petitioners Hamby, Fenenbock, and Frazier.  Petitioner Frazier did not file any additional state petition for collateral relief in the year following December 31, 1996.  Accordingly, the one-year period of limitation ran without interruption from January 1, 1997, until it expired on December 31, 1997.

It is undisputed that the pro se federal habeas petition received from petitioner Frazier on November 20, 1997, was timely filed.  Petitioner's amended petition was submitted by counsel on August 4, 2003, almost six years after the statute of limitations expired.  Any new

23

1    claims alleged in the amended petition are barred by the AEDPA statute of limitations unless

2    some other statutory provision applies or the claims are rendered timely under some applicable

3    rule or doctrine.

4        B.   Application of § 2244(d)(1)(B)

5            The AEDPA statute of limitations will not run from the date on which a prisoner's

6    judgment became final if a later commencement date is available under one of the three

7    alternative provisions contained in 28 U.S.C. § 2244(d)(1).  Under § 2244(d)(1)(B), the one-year

8    period of limitation may run from "the date on which the impediment to filing an application

9    created by State action in violation of the Constitution or laws of the United States is removed, if

10   the applicant was prevented from filing by such State action."

11           "The limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the

12   conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas

13   petitions by denying access to legal materials."  Shannon v. Newland, 410 F.3d 1083, 1087 (9th

14   Cir. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 1333 (2006).  See Whalem/Hunt v. Early, 233

15   F.3d 1146, 1148 (9th Cir. 2000) (en banc) (suggesting that lack of legal materials concerning the

16   AEDPA in the prison law library may constitute an impediment to the filing of an application for

17   purposes of § 2244(d)(1)(B)); Ross v. Hickman, No. C 00-2887 CRB (PR), 2001 WL 940911, *4

18   (N.D. Cal. Aug. 10, 2001) (commenting that many state prisoners have relied upon

19   Whalem/Hunt to argue that the limitation period did not start running until the state department

20   of corrections updated its prison law libraries with AEDPA materials in 1998).

21   "[D]eterminations of whether there was an 'impediment' under § 2244(d)(1)(B) . . . are highly

22   fact-dependent."  Whalem/Hunt, 233 F.3d at 1148.  Accord Mendoza v. Carey, 449 F.3d 1065,

23   1069 (9th Cir. 2006).

24           In the present case, petitioner Frazier argues that prison officials destroyed her

25   legal records, thereby preventing her from filing a full federal habeas petition when she drafted a

26   pro se petition by copying co-defendant Hamby's petition in 1997.  Petitioner claims that this

1  state-created impediment was not removed until November 26, 2001, when her habeas counsel

2  filed a state exhaustion petition in the California Supreme Court.

3           In a declaration dated January 15, 2004, petitioner Frazier makes the following

4  statements concerning the existence of this alleged state-created impediment:  prior to October

5  1996, petitioner had files containing correspondence with her attorneys, copies of her appellate

6  briefs, and a copy of the state habeas petition that had been prepared by her appellate attorney

7  along with the appeal; soon after the California Supreme Court denied review on October 2,

8  1996, petitioner received from her appellate lawyer five thirty-pound boxes of files and records

9  containing the clerk's and reporter's transcripts, discovery records, records from petitioner's trial

10  attorney, and other documents; petitioner did not have relatives or friends who could take

11  possession of the records and did not have enough money to pay for mailing the records to

12  anyone; prison officials complained about the space taken up by petitioner's legal materials and

13  told her she had to get rid of the materials and keep her property in a locker or a drawer;

14  petitioner had no choice but to consent to the destruction of her legal materials by prison staff; at

15  some point in 1997, petitioner learned from co-defendant Sue Hamby, who was housed at the

16  same correctional facility, that Hamby's appointed appellate lawyer had prepared a federal

17  habeas petition for her; Hamby allowed petitioner to copy the petition; petitioner Frazier copied

18  it, signed the petition, and gave it to prison officials for mailing; petitioner "had no transcripts or

19  other records relating to [her] case because they had been destroyed."  (Pet'r Frazier's Opp'n to

20  Second Mot. to Dismiss, Frazier Decl. ¶¶ 7-9.)

21           Petitioner's conclusory statements do not establish specifically what records were

22  destroyed, precisely when those records were destroyed, and whether petitioner exercised her

23  rights under state rules and regulations to retain specific amounts of personal property in both her

24  cell and in storage at the prison.  The court's files for this case contain evidence that petitioner

25  Frazier still possessed some legal materials when she was preparing her pro se federal habeas

26  petition because the petition filed in November 1997 includes copies of the state petition for writ

of habeas corpus prepared and filed by her appellate counsel, petitioner's appellate brief and her reply brief, a letter brief filed by appellate counsel in response to the court's request for additional briefing, the opinion of the California Court of Appeal, and a declaration by petitioner's trial counsel concerning his failure to object to one of the jury instructions given at petitioner's trial. These attachments to the pro se petition touch upon many of the issues presented in petitioner's amended federal habeas petition. It does not appear that petitioner was unable to raise those issues in her initial federal habeas petition due to the destruction of some of her legal materials.

Assuming for the sake of argument that petitioner has demonstrated the existence of a state-created impediment, the undersigned is unpersuaded that the impediment continued to exist up to the date on which habeas counsel filed a state exhaustion petition on petitioner Frazier's behalf. Any impediment that arose from the destruction of petitioner's legal materials, which consisted solely of records related to the first trial, was removed when copies of those particular legal materials were obtained by petitioner's counsel. The record reflects that by August 31, 1998, counsel for petitioners Hamby, Fenenbock, and Frazier had obtained a substantially complete state court record for all three trials. (See Joint Status Report and Stipulation lodged in the Frazier case on Aug. 28, 1998; Pet'r Frazier's Opp'n to Resp't's Second Mot. to Dismiss, Decl. of Daniel J. Broderick ¶¶ 7 & 8.) As of August 31, 1998, petitioner's habeas counsel was in possession of copies of the records that were destroyed and there was no longer any impediment to the filing of a petition containing all claims that could have been discerned from the records petitioner received from appellate counsel soon after October 2, 1996. If the one-year period of limitation began to run on September 1, 1998, the period expired on August 31, 1999. Petitioner's state exhaustion petition filed November 26, 2000, could not revive the expired statute and therefore had no tolling effect. The amended federal habeas petition filed August 4, 2003, was filed almost four years after the statute of limitations expired /////

1    even under this generous calculation.  Petitioner has failed to demonstrate that her amended

2    petition were timely filed by application of § 2244(d)(1)(B).

3        C.  Application of § 2244(d)(1)(D)

4        Pursuant to § 2244(d)(1)(D), the one-year period of limitation will run from "the

5    date on which the factual predicate of the claim or claims presented could have been discovered

6    through the exercise of due diligence," if that date is later than the date on which the petitioner's

7    judgment became final.  The language of § 2244(d)(1)(D) requires the court to determine the date

8    on which the petitioner "could have discovered the factual predicate" of his claim, not the date on

9    which the petitioner understood the legal significance of the facts known to him or the date on

10   which he obtained evidence to support his claim.  Hasan v. Galaza, 254 F.3d 1150, 1154 & n.3

11   (9th Cir. 2001) (holding that the due diligence clock started ticking when the prisoner learned

12   facts that supported a good faith basis for arguing prejudice arising from ineffective assistance of

13   counsel, whether or not the prisoner understood the legal significance of the facts known to him);

14   Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or

15   through diligence could discover) the important facts, not when the prisoner recognizes their

16   legal significance."); Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) ("Section

17   2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas

18   petitioner gathers every possible scrap of evidence that might, by negative implication, support

19   his claim.").

20       Petitioner Frazier contends that the statute of limitations did not begin to run on

21   January 1, 1997, for the new claims alleged in her amended federal habeas petition.  Her theory is

22   that the new claims were not discovered until habeas counsel completed his investigation,

23   research, and evidence-gathering for all viable claims and drafted a state exhaustion petition.

24   The undersigned finds that petitioner knew or should have known the relevant facts supporting at

25   least parts of all of her claims except Claim 14 prior to the expiration of the one-year period of

26   limitations on December 31, 1997, either because she was present when the relevant facts

27

1  occurred, or because the issue was apparent on the record at the conclusion of trial and direct

2  appeal.

3         Petitioner Frazier has demonstrated that she was unaware of the factual basis for

4  Claim 14, which concerns the introductory videotape played for potential jurors, because she was

5  not present when the videotape was played, has never seen the videotape, and was first informed

6  of the contents of the videotape by habeas counsel in November 2001.  Except for Claim 14,

7  however, petitioner could have alleged all of her claims as grounds for relief, even if she had

8  alleged them incompletely and inartfully, in the pro se habeas petition filed on November 20,

9  1997.

10         Counsel's declaration demonstrates that he knew or should have known the

11  relevant facts supporting petitioner's new claims, including Claim 14, by the end of 1999.  Thus,

12  even if the factual predicates for any of the new claims had been unknown to petitioner Frazier,

13  the factual predicates should have been known by her habeas counsel on or before December 31,

14  1999, thereby triggering the running of the one-year period of limitation prior to December 31,

15  1999, on various dates that cannot be determined by the court due to the imprecise nature of the

16  declarations offered by petitioner.

17         Because the statute of limitations began to run for all claims on dates prior to

18  January 1, 2000, substantially more than one year before petitioner filed her state exhaustion

19  petition on November 26, 2001, the statute of limitations had expired for each claim prior to

20  November 26, 2001, and the state petition had no tolling effect.  Put another way, petitioner has

21  not shown that she did not discover, and could not have discovered, the factual predicates for any

22  of her new claims prior to November 26, 2000, i.e., one year prior to the filing of her state

23  exhaustion petition.  Petitioner has therefore failed to demonstrate that any of the new claims in

24  her amended petition were timely filed by application of § 2244(d)(1)(D).

25  /////

26  /////

1  II.  Relation Back of New Claims

2         An application for a writ of habeas corpus "may be amended or supplemented as

3  provided in the rules of civil procedure applicable to civil actions."  28 U.S.C. § 2242.  See also

4  Rule 11, Fed. R. Governing § 2254 Cases (providing that the Federal Rules of Civil Procedure

5  may be applied in habeas corpus proceedings to the extent that the rules of civil procedure are not

6  inconsistent with any statutory provision or with the rules governing habeas cases); Fed. R. Civ.

7  P. 81(a)(2) (providing that the Federal Rules of Civil Procedure are applicable to proceedings for

8  habeas corpus "to the extent that the practice in such proceedings is not set forth in statutes of the

9  United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255

10  Proceedings").

11         Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his

12  pleadings once as a matter of course before a responsive pleading is served and may seek leave of

13  court to amend his pleading at any time during the proceeding.  Mayle v. Felix, 545 U.S. 644,

14  ___, 125 S. Ct. 2562, 2569 (2005).  Under Rule 15(c), a petitioner's amendments made after the

15  statute of limitations has run will relate back to the date of his original pleading if the new claims

16  arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

17  original pleading.  Id. (citing Fed. R. Civ. P. 15(c)(2)).

18         In Mayle v. Felix, the Supreme Court explained that "[t]he 'original pleading' to

19  which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas

20  proceeding."  Id. at 2569-70.  The Court observed that the complaint in an ordinary civil case

21  need only provide fair notice of the plaintiff's claim and the grounds on which the claim rests,

22  while a habeas petition is required to specify all grounds for relief available to the petitioner and

23  state the facts supporting each ground.  Id. at 2570.  Because of this difference between civil

24  complaints and habeas petitions, the relation back of new habeas claims "depends on the

25  existence of a common 'core of operative facts' uniting the original and newly asserted claims."

26  /////

1   Id. at 2572.[2]  The common core of operative facts must not be viewed at too high a level of

2   generality, and an "occurrence" will consist of each separate set of facts that supports a ground

3   for relief.  Id. at 2573.  See also United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) ("[A]

4   petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of

5   ineffective assistance in the original petition, and then amending the petition to assert another

6   ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."), cert.

7   denied ___U.S.___, 126 S. Ct. 2906 (2006).  Applying these principles in Mayle, the Court ruled

8   that the petitioner's new claim did not relate back to his original claim because the new claim

9   arose from the petitioner's own pretrial interrogation and was different in time and place from his

10   original claim, which arose from the pretrial police interrogation of a witness.  Id. at 2572-73.

11          Neither the Supreme Court's analysis in Mayle nor the language of Rule 15

12   supports a conclusion that a new claim raised by a party in his amended pleading can relate back

13   to a claim raised by another party in a separate pleading in the same action, much less to a claim

14   raised by another party in a pleading in another action.  Rule 15(a) speaks repeatedly of "*a party*"

15   amending "*the party's pleading*," and Rule 15(c) provides that "[a]n amendment of *a pleading*

16   relates back to the date of *the original pleading* when . . . the claim or defense asserted in *the*

17   *amended pleading* arose out of the conduct, transaction, or occurrence set forth or attempted to

18   be set forth in *the original pleading*."  Fed. R. Civ. P. 15(a) and (c) (emphasis added).  Thus, in

19   determining relation back pursuant to Rule 15(c), the only relevant pleadings are the party's

20   original pleading and that same party's amended pleading.

21          While Rule 15(c) provides for relation back in three different circumstances, only

22   one of the three provisions is applicable to habeas proceedings.  The rule, omitting only the

23   /////

24   _____

25      [2]  See Jackson v. Roe, 425 F.3d 654, 660 n. 8 (9th Cir. 2005) ("Instead, held the Court, an
    amended claim in a habeas petition relates back for statute of limitations purposes only if it shares

26   a 'common core of operative facts' with the original claim.) (quoting Mayle v. Felix, 125 S. Ct. at
    2574).

provisions concerning service of the United States or any agency or officer thereof for purposes

of Rule 15(c)(3), provides as follows:

> **(c) Relation Back of Amendments.** An amendment of a pleading
> relates back to the date of the original pleading when
>> (1) relation back is permitted by the law that provides
>> the statute of limitations applicable to the action, or
>> (2) the claim or defense asserted in the amended
>> pleading arose out of the conduct, transaction, or
>> occurrence set forth or attempted to be set forth in the
>> original pleading, or
>> (3) the amendment changes the party or the naming of
>> the party against whom a claim is asserted if the foregoing
>> provision (2) is satisfied and, within the period provided by
>> Rule 4(m) for service of the summons and complaint, the
>> party to be brought in by amendment (A) has received such
>> notice of the institution of the action that the party will not
>> be prejudiced in maintaining a defense on the merits, and
>> (B) knew or should have known that, but for a mistake
>> concerning the identity of the proper party, the action would
>> have been brought against the party. . . .

Fed. R. Civ. P. 15(c) (as last amended in 1993).

Rule 15(c)(1) does not apply to habeas proceedings because 28 U.S.C. § 2244(d),

i.e., "the law that provides the statute of limitations applicable to the action," does not include a

provision permitting relation back.

Rule 15(c)(2) is the provision applied to habeas proceedings by the Supreme

Court in <u>Mayle</u>. 125 S. Ct. at 2566 ("This case involves two federal prescriptions:  the one-year

limitation period imposed on federal habeas corpus petitioners by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1); and the rule that pleading

amendments relate back to the filing date of the original pleading when both the original plea and

the amendment arise out of the same 'conduct, transaction, or occurrence,' Fed. Rule Civ. Proc.

15(c)(2).").

Rule 15(c)(3), which concerns amendments that change the party against whom a

claim is asserted, is not applicable to habeas proceedings because there is only one possible

petitioner and there are habeas statutes and rules that govern the naming of the proper respondent

31

1   and the service of respondents.  Compare Fed. R. Civ. P. 15(c)(3) and Fed. R. Civ. P. 4(m) with

2   Rule 2(a), Fed. R. Governing § 2254 Cases (requiring a petitioner currently in custody under a

3   state-court judgment to name as respondent the state officer who has custody of him) and Rule 4,

4   Fed. R. Governing § 2254 Cases (stating requirements for service of habeas petition and order).

5   See Rule 11, Fed. R. Governing § 2254 Cases; Fed. R. Civ. P. 81(a)(2).

6            Petitioners' reliance on the Advisory Committee Notes to the 1966 amendment to

7   Rule 15(c) is misplaced because, according to those very notes, the 1966 amendment amplified

8   the rule "to state more clearly when an amendment of a pleading changing the party against

9   whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a

10  defendant) shall 'relate back' to the date of the original pleading" and in particular addressed a

11  problem that arose "in certain actions by private parties against officers or agencies of the United

12  States."  The 1966 amendment concerned only Rule 15(c)(3), which is not applicable to habeas

13  petitions, and the advisory committee notes addressed only the amendment of a pleading to

14  change the party against whom a claim or defense is asserted.  The notes do not support a

15  conclusion that a habeas petitioner's new claims can relate back to the date of a pleading filed by

16  another habeas petitioner in a separate habeas proceeding.  In particular, the final paragraph of

17  those notes, referring to "[t]he relation back of amendments changing plaintiffs," is irrelevant in

18  habeas proceedings in which the only possible "plaintiff" is the state prisoner who is challenging

19  his state court conviction or sentence.  The undersigned rejects petitioners' argument that any of

20  their new claims relate back to claims raised by the other petitioners in their separate cases.

21           Petitioners' reliance on orders relating their cases is also misplaced.  Under the

22  Local Rules of Practice for the United States District Court for the Eastern District of California,

23  the court may assign two or more cases to the same district judge or magistrate judge, or both,

24  when doing so will "effect a substantial savings of judicial effort" and avoid a "substantial

25  duplication of labor."  Local Rule 83-123(a).  As stated in the court's standard order relating

26  cases pursuant to this rule, no consolidation of the cases is effected by their assignment to the

1   same judge or judges,[3] and each case proceeds as a separate case.  The relating of cases for

2   purposes of judicial economy has no bearing on the relation back of new claims alleged in a

3   party's amended pleadings pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

4           The court turns to a comparison of the claims raised in petitioner Frazier's

5   original petition and those raised in her amended petition.  The claims alleged in the original

6   petition are as follows:

7           Ground 1:  Petitioner's rights under the Sixth and Fourteenth
            Amendments to due process, a fair trial, and trial by jury were
8           violated by the trial court's failure to give requested lesser related
            offenses instruction on accessory after the fact, although there was
9           substantial evidence to support such a finding and the defense
            relied on this theory in closing argument;
10
11          Ground 2:  Petitioner's rights under the Sixth and Fourteenth
            Amendments to due process, a fair trial, and trial by jury, were
12          violated by the trial court's erroneous finding that there are no
            lesser included offenses of conspiracy to commit murder and the
13          court's failure to instruct on lesser included offenses when there
            was substantial evidence to support such a finding.

14          In her amended petition, petitioner Frazier alleges her two original claims as

15   Claims 9 and 10.  Respondent does not dispute the timeliness of Claims 9 and 10, and the

16   undersigned finds that those claims relate back to the claims in the original petition.

17          Petitioner Frazier's disputed Claims 1-8 and 11-16 are as follows:

18          Ground 1:  Petitioner's due process rights under the Fifth and
            Fourteenth Amendments were violated when her conspiracy
19          conviction was based on overt acts that, as a matter of law, were
            not separate from the charged conspiracy agreement;
20

21   _____

22       [3]   The related case order filed in the Hamby, Fenenbock, and Frazier cases in 1997
     specifically stated that "[t]he parties should be aware that relating the cases under Local Rule 83-123
23   merely has the result that the three (3) actions are assigned to the same judge and magistrate judge;
     no consolidation of the actions is effected." (Order filed Dec. 24, 1997, in case No. CIV S-97-0164,
24   case No. CIV S-97-1731, and case No. CIV S-97-2196, at 2.)  Likewise, the related case order filed
     in the Hamby, Fenenbock, Frazier, Bond, and MacCarlie cases in 2001 states that "[t]he parties
25   should be aware that relating these five cases under Local Rule 83-123 merely has the result that the
     actions are assigned to the same judge; no consolidation of the actions is effected." (Order filed Dec.
26   12, 2001, in case No. CIV S-97-0164, case No. CIV S-97-1731, case No. CIV S-97-2196, case No.
     CIV S-99-2150, and case No. CIV S-00-1830, at 2.)

Ground 2:  Petitioner's rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated by the denial of defense access to key prosecution witness Randy Hogrefe, both pretrial and prior to cross-examination at trial;

Ground 3:  Petitioner's rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated by her conviction for conspiracy under a factual theory that did not happen, that the government knew did not happen, and that was supported by false evidence planted and nurtured by the government;

Ground 4:  Petitioner's rights to due process and to confront witnesses under the Fifth, Sixth, and Fourteenth Amendments were violated when the trial court permitted the use of Randy Hogrefe's testimony based on unreliable memories which were tainted by police, social worker, and prosecutorial coaching;

Ground 5:  Petitioner did not receive effective assistance of trial counsel, in violation of the Sixth and Fourteenth Amendments, as follows:

    1.  Counsel failed to recognize that a conspiracy conviction cannot be based on overt acts that were not separate from the charged conspiracy agreement and did not challenge the issue after the court denied counsel's motion to strike certain overt acts;

    2.  Counsel made virtually no effort to interview witnesses Michael Sutton and Bert Jones prior to trial or to investigate the circumstances surrounding the making of their pre-trial statements and also made no effort to question the police and district attorney under oath about what Sutton said or did not say about petitioner Frazier in his first statement;

    3.  Counsel failed to contact witness  Gregory (Vito) Bullard prior to trial and failed to call Bullard and Cindy Arends as witnesses at trial to impeach Sutton's testimony;

    4.  Counsel failed to contact and did not call as witnesses Randy Thompson, April May Gault, or any of the other witnesses who were present during rides in which petitioner allegedly threatened Hop Summar, despite petitioner's repeated requests that counsel do so in order that these witnesses could corroborate petitioner's testimony and impeach the testimony of Sutton and Jones regarding petitioner's alleged threats;

5.  Counsel undermined petitioner's credibility by presenting inconsistent defenses at trial when he cross-examined Jones on the theory that petitioner made threats constantly;

6.  Counsel failed to request an instruction on the difference between solicitation and conspiracy despite the fact that the trial court sua sponte inquired whether such an instruction would be submitted;

7.  Counsel failed to argue to the jury or request jury instructions on lesser included offenses, including conspiracy to commit a battery;

8.  Counsel failed to investigate and present a defense on the issue of multiple, independent conspiracies;

9.  After the trial court deferred ruling on counsel's pretrial motion to limit the nature of the conspiracy charge, counsel failed to get a ruling on the motion at trial;

10.  Counsel failed to argue to the jury that petitioner's voluntary intoxication prevented her from forming the requisite intent to kill, and he failed to request a jury instruction on voluntary intoxication and inability to form the intent required for conspiracy;

11.  Counsel failed to request a jury instruction that identified intent to kill as an element of conspiracy to murder, and no such instruction was given;

12.  Counsel failed to object to the prosecutor's repeated misconduct throughout trial and during closing argument;

13.  Counsel failed to determine what co-defendant MacCarlie would testify to at his trial and failed to move effectively for petitioner's trial to be conducted after MacCarlie's trial;

14.  Counsel failed to investigate what other witnesses, such as co-defendants Lockley and Dodds, would testify to about co-defendant MacCarlie's behavior at the top of the hill at or near the time of the victim's murder;

/////

15.  Counsel failed to object to or make a sufficient record to challenge the repeated violations of due process committed by the police pretrial and at trial;

16.  Counsel failed to impeach Kartchner on his statements that Randy Hogrefe related information that only a person present at the scene could have known, when the information was related to Hogrefe through media coverage, access to police reports, and conversations with police, social workers, the prosecutor, and others;

17.  Counsel failed to object to improper testimony at trial that DNA evidence is 99 percent accurate;

18.  Counsel failed to object to the playing of Judge Letton's videotape for prospective jurors, failed to object to the script used by the judge in the videotape, and failed to explain to petitioner her right to be present during the showing of the videotape;

19.  Counsel failed to adequately prepare petitioner to testify at trial, failed to ask essential questions during petitioner's direct examination, and asked her questions during direct examination that were manifestly prejudicial to her case;

20.  Counsel failed to submit any jury instructions at all and, as a result, the jury was not given any instructions as to petitioner's defense;

Ground 6:  Petitioner did not receive effective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments, when appellate counsel (1) failed to adequately review the trial record for error and present the claims now raised in petitioner's amended federal habeas petition and (2) failed to assist petitioner with respect to a state habeas petition raising errors that cannot be resolved by reference to the trial court record;

Ground 7:  Petitioner's due process rights under the Sixth and Fourteenth Amendments to fair notice of the charges against her were violated by the use of a fluid and expansive conspiracy charge that prevented petitioner from preparing and presenting a defense;

Ground 8:  Petitioner's right to due process under the Fifth and Fourteenth Amendments and her right to compulsory process under the Sixth and Fourteenth Amendments were violated by the scheduling of trials so that petitioner's trial was conducted before co-defendant MacCarlie's trial;

36

Ground 11:  Petitioner's rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated by her conviction despite insufficient evidence of the charged conspiracy;

Ground 12:  Petitioner's rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated by the destruction, concealment, and suppression of evidence favorable to her defense, as follows:  the chief investigator routinely intimidated witnesses by threatening them; witnesses stated exculpatory evidence, but the chief investigator did not record those statements and falsely stated that the statements had not been made; the prosecution team permitted a key witness to destroy his first written statement and then added names to the witness's subsequent statement; the prosecution team intimidated the key juvenile witness, refused to record witness interviews with him so that false memories could be created in his head, worked with child services to bolster the false memories, denied the defense access to the witness, and did not record his exculpatory statements; the prosecution and the police had knowledge of facts that contradicted their theory of prosecution but did not disclose those facts to the defense prior to petitioner's trial; and exculpatory and impeaching information was destroyed or erased and never released to the defense;

Ground 13:  Petitioner's right to due process under the Fifth and Fourteenth Amendments was violated by the use of unfair governmental investigative techniques that made it possible to present false and misleading evidence at trial and impossible to present a constitutionally adequate defense at trial, as follows: virtually every witness interviewed by Kartchner has stated that Kartchner told them they were either a witness for the prosecution or a suspect; Kartchner frequently did not tape record interviews or take notes during them, or he wrote reports months later, so that when at least ten witnesses denied making statements attributed to them the prosecution called Kartchner to the stand to impeach the witnesses with undocumented memories of what the witnesses had said; during closing argument, the prosecutor relied on the prior inconsistent statements made known through Kartchner's testimony to make its case against petitioner; the prosecution enlisted the aid of child services to falsely plant memories in Randy Hogrefe's mind while denying the defense access to him; the prosecution caused Sutton's original written statement to be destroyed; Kartchner deliberately caused petitioner to fail a polygraph examination by placing lurid, bloody post-mortem photographs in front of her to affect her recorded responses; the prosecution deliberately housed two witnesses against petitioner in the same hotel room so their stories about petitioner could be supportive of one another;

Ground 14:  Petitioner's rights to due process, a fair trial, and confrontation under the Fifth and Fourteenth Amendments were

violated by repeated prosecutorial misconduct, as follows:  the
prosecution knowingly presented the false testimony of Dan
Kartchner to bolster Randy Hogrefe's testimony; during closing
argument, the prosecutor argued facts outside the record and
interjected his opinion about the credibility, or the lack thereof, of
the witnesses; the prosecution prevented Randy Hogrefe from
seeing the defense; the prosecution approved of the destruction of
Sutton's notes; the prosecution assisted in the planting of a false
memory in Hogrefe's mind; the prosecution repeatedly vouched for
the credibility of witnesses at trial and injected himself as a witness
at trial; the prosecutor knowingly used false and misleading
testimony concerning petitioner's voice in a car, statements
petitioner made during an improper polygraph examination, DNA
blood evidence, Kartchner's bolstering of Randy Hogrefe's
credibility, and the victim's wounds; the prosecutor repeatedly
conducted improper rehabilitation of Kartchner as a witness; the
prosecutor improperly vouched for witnesses, particularly Hogrefe
and Kartchner, during closing; the prosecutor argued matters
outside the evidence; the prosecutor presented false and misleading
evidence and statements at trial and during closing about a rock fall
that corroborated Hogrefe's testimony;

Ground 15:  Petitioner was denied her rights to due process under
the Fifth and Fourteenth Amendments and to a jury trial under the
Sixth and Fourteenth Amendments by the trial court's improper
and unauthorized use of a videotape during voir dire;

Ground 16:  The accumulation of error rendered petitioner's
conviction fundamentally unfair and a violation of her rights under
the Fifth and Fourteenth Amendments.

After careful consideration of petitioner Frazier's original and amended petitions,

as well as the parties' arguments, the undersigned finds that Claims 1-8 and 11-15 do not share a

common core of operative facts with either of petitioner's original claims and therefore do not

relate back to the original petition.  As set forth above, petitioner's original two claims were quite

specific and limited.  Therein petitioner challenged only the trial court's failure to give a lesser

related instruction on accessory after the fact and the trial court's finding that there were no lesser

included offenses with respect to the charged conspiracy to commit murder.  On the other hand,

petitioner Frazier's new claims 1-8 and 11-16, present a broad ranging challenge to her judgment

of conviction.  The grounds set forth in these new claims include that petitioner was convicted of

the conspiracy based upon overt acts not separate from the conspiracy as a matter of law, denied

1   access to witness Hogrefe, convicted on false evidence tainted by prosecutorial and police

2   misconduct, denied the effective assistance of trial counsel in twenty specific instances, denied

3   the effective assistance of appellate counsel, insufficiency of the evidence and denied a fair trial

4   in numerous other respects.  Frazier's original petition does not recite any of the facts needed to

5   support these new claims.  Thus, the original claims and new claims 1-8 and 11-15 are based

6   upon completely separate sets of facts.

7         Claim 16, alleging the cumulative effect of individual errors, relates back to the

8   original claims to the extent that petitioner asserts the combined prejudicial effect of the errors

9   alleged in the two original claims.  If respondent's motion to dismiss is granted, petitioner should

10  be permitted to file a second amended petition alleging Claims 9 and 10, along with a cumulative

11  error claim, if appropriate, grounded on the prejudicial effect of the errors alleged in Claims 9

12  and 10.  So limited, petitioner's new claim of cumulative error would arise from the same

13  common core of operative facts alleged in the original petition and would relate back to that

14  pleading.  See Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001) (upholding relation

15  back of a claim that was based on the same facts as the original pleading but clarified or

16  amplified the claim or theory), cited with approval in Mayle, 125 S. Ct. at 2574 n.7.

17  III.  Equitable Tolling

18        The Ninth Circuit Court of Appeals determined in 1997 that the one-year period

19  of limitation contained in 28 U.S.C. § 2244(d) is a statute of limitations subject to tolling.

20  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in

21  part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir.

22  1998).  The court cautioned that "[e]quitable tolling will not be available in most cases, as

23  extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's

24  control make it impossible to file a petition on time."  Calderon, 128 F.3d at 1288-89 (citing

25  Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1997)).  The availability of

26  equitable tolling of the AEDPA statute of limitations must be limited because courts are expected

1  to "take seriously Congress's desire to accelerate the federal habeas process."  128 F.3d at 1289.

2  See Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (describing the Ninth Circuit's standard

3  as setting a "high hurdle" to the application of equitable tolling).

4          Even where extraordinary circumstances are shown, equitable tolling will not be

5  available unless the petitioner diligently pursued his claims.  128 F.3d at 1289.  It is only when

6  external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

7  habeas petition that equitable tolling may be appropriate.  Miles v. Prunty, 187 F.3d 1104, 1107

8  (9th Cir. 1999).  The petitioner bears the burden of demonstrating grounds for equitable tolling.

9  Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005); Miranda v. Castro, 292

10  F.3d 1063, 1065 (9th Cir. 2002).

11          Since recognizing the availability of equitable tolling of the AEDPA context in

12  1997, the Ninth Circuit Court of Appeals has addressed the issue many times.  For the most part,

13  and most often in unpublished decisions, the appellate court has affirmed district court decisions

14  denying equitable tolling.  Typical decisions affirming the denial of equitable tolling include

15  Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002), in which the court affirmed the

16  district court's denial of equitable tolling where the pro se petitioner filed his petition untimely

17  on the basis of erroneous information provided by the attorney appointed to represent him on

18  direct appeal, and Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001), in which the court

19  affirmed the district court's denial of equitable tolling where the petitioner's attorney

20  miscalculated the limitations period.  In Brambles v. Duncan, 412 F.3d 1066, 1070-71 (9th Cir.),

21  cert. denied, ___ U.S. ___, 126 S. Ct. 485 (2005), the Ninth Circuit recently affirmed the district

22  court's denial of equitable tolling where the petitioner filed an untimely petition after he had

23  previously filed a timely mixed petition but, pursuant to district court instructions that were not

24  affirmatively misleading, chose to dismiss the entire petition and return to state court to exhaust

25  additional claims.  See also Raspberry v. Garcia, 448 F.3d 1150, 1153-54 (9th Cir. 2006)

26  (affirming the denial of equitable tolling because neither the district court's failure to advise the

petitioner of the right to amend his petition to include unexhausted claims nor petitioner's

inability to correctly calculate the limitations period were extraordinary circumstances warranting

equitable tolling).

Due to the highly fact-dependent nature of the grounds for equitable tolling, the

Ninth Circuit has occasionally remanded a case for further factual development of an issue such

as a petitioner's mental illness, a petitioner's access to his legal materials, and the adequacy of a

particular prison law library at a specific time.  See, e.g., Mendoza v. Carey, 449 F.3d 1065,

1069-71 (9th Cir. 2006) (remanding for appropriate development of the record on the issue of

whether petitioner's inability to obtain Spanish-language materials or procure translation

assistance was an extraordinary circumstance preventing him from filing a timely habeas

petition); Laws v. Lamarque, 351 F.3d 919, 922-24 (9th Cir. 2003) (remanding for development

of the record or an evidentiary hearing on the issue of whether the petitioner's mental illness

prevented him from timely filing his habeas petition); Lott v. Mueller, 304 F.3d 918, 923 (9th

Cir. 2002) (remanding for development of the record related to the availability of equitable

tolling where the petition was filed, at most, twenty days late, and the pro se petitioner alleged in

his traverse that he was denied access to his legal files for eighty-two days during the one-year

period of limitation due to two temporary transfers for court proceedings in an unrelated civil

court matter); Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding

for further factual development related to the availability of equitable tolling or a finding of a

state-caused impediment under § 2244(d)(1)(B) where the petitioner alleged that the prison law

library contained no legal materials describing the AEDPA and its one-year limitations period

until June of 1998).

The Ninth Circuit has affirmed or mandated equitable tolling in those relatively

few cases where a diligent petitioner was unable to file a timely petition due to a significant delay

caused by an external force such as the district court, prison officials, or, but rarely, the

petitioner's own habeas counsel.  See Espinoza-Matthews v. California, 432 F.3d 1021 (9th Cir.

2005) (applying equitable tolling for the period of almost eleven months during which the pro se petitioner was housed in administrative segregation for his own protection and was denied access to his legal materials throughout that time despite his diligent efforts to obtain access); Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (finding the misconduct of the petitioner's attorney sufficiently egregious to justify equitable tolling where the attorney was hired nearly a full year in advance of the deadline for filing a federal petition but did not prepare and file the petition despite the fact that the petitioner and his mother contacted the attorney numerous times seeking action and where, despite a request for return of the file, the attorney retained the file for the duration of the limitations period and two months beyond); Smith v. Ratelle, 323 F.3d 813 (9th Cir. 2003) (applying equitable tolling where the district court had previously dismissed the pro se petitioner's timely habeas petition without giving him an opportunity to file an amended petition as an alternative to dismissal); Stillman v. LaMarque, 319 F.3d 1199 (9th Cir. 2003) (applying equitable tolling where the prison litigation coordinator promised the petitioner's attorney that he would obtain the prisoner's signature in time for filing the petition but broke his promise and caused the petition to be late); Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (applying equitable tolling where the district court's initial dismissal of a timely petition was improper and the court's lengthy delay in ruling that the amended petition was unexhausted consumed 258 days of the pro se petitioner's one-year period of limitation and caused the petitioner to lose time that would otherwise have been available for exhausting state court remedies); Miles v. Prunty, 187 F.3d 1104 (9th Cir. 1999) (applying equitable tolling where prison officials delayed the pro se petitioner's request that a check be drawn on his prison trust account for payment of the filing fee); Calderon (Kelly), 163 F.3d 530 (applying equitable tolling in a death penalty case because of an earlier court-ordered stay of the habeas proceedings, the petitioner's alleged mental incompetency, and the court's mistaken dismissal of the timely habeas proceedings); Calderon (Beeler), 128 F.3d 1283 (holding in a death penalty case that the withdrawal of court-appointed habeas counsel, who moved out of state and whose work product was not usable by replacement

1  counsel, qualified as an extraordinary circumstance beyond petitioner's control that justified

2  tolling the statute of limitations).

3         Although the Supreme Court has recently "framed the equitable tolling standard in

4  less absolute terms" than the Ninth Circuit's well established test of "impossible to file a petition

5  on time," the Ninth Circuit has not yet decided whether the Supreme Court's formulation "has

6  lowered the bar somewhat." Espinoza-Matthews v. California, 432 F.3d 1021, 1026 n.5 (9th Cir.

7  2005) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In Pace, the Supreme Court

8  noted that it has "never squarely addressed the question whether equitable tolling is applicable to

9  AEDPA's statute of limitations."  544 U.S. at 418 n.8.  The Court found it unnecessary to reach

10  the question in Pace because the petitioner's failure to establish diligence would preclude the

11  application of equitable tolling to his untimely petition.  Id. at 418-19.  The Court observed that

12  "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements:

13  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

14  stood in his way."  544 U.S. at 418 (citing  Irwin v. Department of Veterans Affairs, 498 U.S. 89,

15  96 (1990)).  See also Raspberry, 448 F.3d at 1153.

16         In the five related cases before this court, the petitioners rely in part on Justice

17  Stevens's concurrence in Duncan v. Walker, 533 U.S. 182 (2001) (Stevens, J., concurring in part

18  and concurring in the judgment).  Justice Stevens, joined by Justice Souter, agreed with the

19  Court's decision that the statutory tolling provision contained in § 2244(d)(2) authorizes tolling

20  while a petitioner is pursuing state, but not federal, post-conviction remedies.  Id.  Citing the

21  general equitable powers of federal courts, Justice Stevens observed that those courts may deem

22  a limitations period tolled as a matter of equity and "might very well conclude that tolling is

23  appropriate based on the reasonable belief that Congress could not have intended to bar habeas

24  review for petitioners who invoke the court's jurisdiction within the 1-year interval prescribed by

25  AEDPA."  Id. at 182-83.  He speculated that, just as the federal courts of appeals uniformly

26  created a one-year grace period running from the date of AEDPA's enactment for all prisoners

whose state convictions became final prior to AEDPA, "federal courts may well conclude that Congress simply overlooked the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted." Id. at 183-84. However, equitable tolling was not the only remedy suggested by Justice Stevens for the class of petitioners he described. He also found "no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies," especially when failure to do so would foreclose federal review of a meritorious claim because of the limitations period. Id. at 183. See also id. at 182 (Souter, J. concurring) ("I have joined Justice Stevens's separate opinion pointing out that nothing bars a district court from retaining jurisdiction pending complete exhaustion of state remedies, and that a claim for equitable tolling could present a serious issue on facts different from those before us.").

The Ninth Circuit has not hesitated to use its equitable powers to protect petitioners in the class described by Justice Stevens. A stay-and-abeyance procedure was approved by the Ninth Circuit soon after AEDPA was enacted. See Calderon v. United States Dist. Court (Thomas), 144 F.3d 618, 620 (9th Cir. 1998) (endorsing a procedure permitting withdrawal of unexhausted claims and abeyance); Calderon v. United States Dist. Court (Taylor), 134 F.3d 981, 987-88 (9th Cir. 1998) (recognizing the district court's authority to allow a petitioner to amend a mixed petition to delete unexhausted claims and then hold the completely exhausted petition in abeyance pending exhaustion); Greenawalt v. Stewart, 105 F.3d 1268, 1274 (9th Cir. 1997) (recognizing that the district court has discretion to stay a fully exhausted petition). See also Fetterly v. Paskett, 997 F.2d 1295, 1301-02 (9th Cir. 1993) (holding in a pre-AEDPA case that the district court abused its discretion in denying a capital habeas petitioner's motion to stay a petition containing only exhausted claims pending exhaustion of additional claims in state court). The Ninth Circuit has also applied the alternate remedy of equitable tolling where a diligent petitioner was unable to file a timely petition due to an improper

1    dismissal or other mishandling and consequent delay caused by the district court.  See Smith, 323

2    F.3d 813; Corjasso, 278 F.3d 874; Calderon (Kelly), 163 F.3d 530.  Moreover, in applying

3    equitable tolling in Corjasso, decided after Duncan, the court commented that its decision to toll

4    the statute "during part of the pendency of [Corjasso's first federal habeas case] is not contrary to

5    the rule in Duncan, for we do not hold that equitable tolling of the statute is appropriate for the

6    entire time Corjasso's petitioner remained in federal court" but "only during the delay caused by

7    the extraordinary circumstances beyond Corjasso's control."  278 F.3d at 879.

8            The petitioners in the five related cases before this court do not fall within the

9    class of petitioners described by Justice Stevens in his concurring opinion in Duncan.  The five

10   petitioners filed timely habeas petitions raising only exhausted claims.  Their petitions were not

11   dismissed, and all five petitioners are proceeding in their original federal habeas actions.  These

12   petitioners did not invoke the court's jurisdiction over meritorious claims within the one-year

13   interval prescribed by AEDPA, only to find habeas review of those claims forever barred due to

14   the court's failure to retain jurisdiction over the timely-filed claims while the petitioners returned

15   to state court to exhaust additional claims.  Nor are these petitioners and the petitioner in

16   Corjasso similarly situated.  Corjasso, 278 F.3d at 878 (applying equitable tolling where the

17   district court's initial dismissal of a timely petition was improper and the court's lengthy delay in

18   ruling that the amended petition was unexhausted consumed 258 days of the pro se petitioner's

19   one-year period of limitation and caused the petitioner to lose time that would otherwise have

20   been available for exhausting state court remedies).

21           The undersigned finds that equitable tolling should be applied during a portion of

22   these federal proceedings, but, as the Ninth Circuit held in Corjasso, "only during the delay

23   caused by the extraordinary circumstances beyond [petitioners'] control." 278 F.3d at 879.  It

24   was beyond the control of petitioners Hamby, Fenenbock, and Frazier that when judgment was

25   entered against them on March 16, 1994, five co-defendants remained to be tried in a case in

26   which the prosecution's theory was that all eight conspired to murder Gary Summar and

1   participated in his murder.  Trial did not commence for co-defendants Bond, MacCarlie, and

2   Dodds until September 1994, and judgment was not entered against co-defendants Bond and

3   MacCarlie until January 20, 1995.  The trial for co-defendants Adcock and Lockley was not

4   conducted until 1995.  It was beyond the control of petitioners Hamby, Fenenbock, and Frazier

5   that their appeals had to be filed in 1994 prior to the trials of five co-defendants.  Petitioners

6   Hamby, Fenenbock, and Frazier were not present during the two subsequent trials, had no access

7   to the transcripts of those trials, were in custody during pre-trial litigation, were incarcerated after

8   sentencing, and were unrepresented after the California Supreme Court denied review on direct

9   appeal on October 2, 1996.  Although the three petitioners successfully filed timely federal

10  habeas petitions, the pro se petitions filed by petitioner Hamby on January 31, 1997, petitioner

11  Fenenbock on September 12, 1997, and petitioner Frazier on November 20, 1997, were filed

12  without access to any records from the other two trials involving their co-defendants.  Counsel

13  was appointed for petitioner Fenenbock on December 4, 1997, less than a month prior to the

14  expiration of the AEDPA statute of limitations under § 2244(d)(1)(D).  Counsel for petitioners

15  Hamby and Frazier were appointed on January 15, 1998, two weeks after the statute of

16  limitations expired under § 2244(d)(1)(D).  By August 31, 1998, however, counsel for petitioners

17  Hamby, Fenenbock, and Frazier had obtained a substantially complete state court record for the

18  three trials.  (See Joint Status Report and Stipulation lodged in the Hamby, Fenenbock, and

19  Frazier cases on Aug. 28, 1998; Decl. of Daniel J. Broderick attached to Pet'r Frazier's Opp'n

20  filed Aug. 23, 2005, ¶¶ 7 & 8.)

21          The undersigned finds that the delay caused by extraordinary circumstances

22  beyond the control of petitioners Hamby, Fenenbock, and Frazier ended by August 31, 1998.

23  While the state court record is voluminous, portions of the record were obtained prior to August

24  31, 1998.  Moreover, petitioners Hamby, Fenenbock, and Frazier have not shown that it was

25  impossible to identify new claims and seek a stay within one year after obtaining a substantially

26  complete state court record for the three trials on August 31, 1998.  Indeed, in their joint status

report filed May 14, 1999, counsel for petitioners Hamby, Fenenbock, and Frazier advised the

court that all three of them had read the transcripts for their joint trial and had jointly identified

several potential constitutional claims, some of which had been presented to the state courts and

some of which had not.  (See Joint Status Report filed by petitioners Hamby, Fenenbock, and

Frazier on May 14, 1999, at 2.)  In their May 14, 1999 status report, petitioners' counsel also

indicated that they had recently obtained and viewed the videotape that was played for potential

jurors.  (Id.)  Although the statute of limitations for petitioners' videotape claims may have run

from a date later than August 31, 1998, any delay after August 31, 1998 with regard to

petitioners' other new claims is attributable to petitioners rather than to external forces outside

their control.

Equitable tolling from December 31, 1996, when the judgment for petitioners

Hamby, Fenenbock, and Frazier became final, to August 31, 1998, when extraordinary

circumstances beyond petitioners' control ceased to exist, does not render petitioners' amended

federal petitions timely.  Given that period of tolling the one-year period of limitation began to

run on September 1, 1998, and expired on August 31, 1999.  The state exhaustion petitions filed

by petitioners Hamby and Frazier on November 26, 2001, and by petitioner Fenenbock on

December 10, 2001, were filed more than two years too late to toll the statute under § 2244(d)(2),

and the amended federal petitions filed by these three petitioners in 2003 were filed

approximately four years late.

Other arguments advanced by petitioners in favor of additional equitable tolling

are unpersuasive.  It is undisputed that respondents' counsel stipulated to continuances of status

conferences up to October 2001 and did not object to continuances of various deadlines and

hearing dates.  However, the petitioners have not demonstrated that respondents waived the

statute of limitations, and there is no evidence that petitioners were affirmatively misled by

/////

/////

1  respondents or the court with regard to the statute of limitations.[4]  The need to prepare and file

2  state exhaustion petitions was not an external force that made it impossible for petitioners

3  Hamby, Fenenbock, and Frazier to prepare and file state exhaustion petitions within a year after

4  August 31, 1998.

5         The petitioner in this case is not entitled to equitable tolling for a period of time

6  sufficient to render her amended petition timely.

7                                    CONCLUSION

8         IT IS RECOMMENDED that respondent's August 4, 2005 motion to dismiss be

9  granted with leave to file a second amended petition alleging the claims alleged in petitioner's

10  first amended petition as Claims 9 and 10, along with a cumulative error claim, if appropriate,

11  grounded solely on the prejudicial effect of the errors alleged in those two claims.

12         These findings and recommendations will be submitted to the United States

13  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

14  twenty days after being served with these findings and recommendations, any party may file and

15  serve written objections with the court.  A document containing objections should be titled

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

17  shall be filed and served within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may, under certain circumstances, waive

19  the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

20  1991).

21  DATED: September 11, 2006.

22

23  DAD:13
    fraz2196.mtd2                    DALE A. DROZD
24                                   UNITED STATES MAGISTRATE JUDGE

25         [4] Indeed, at least as early as April 2000 counsel for respondent was suggesting in opposition
    to a discovery motion that any new claims presented in an amended petition may be procedurally
26  barred.